1
2
3
4
5
6

HARRIS LAW PRACTICE LLC
STEPHEN R. HARRIS, ESQ. NVB 1463
Email: steve@harrislawreno.com
NORMA GUARIGLIA, ESQ. NVB 16244
Email: norma@harrislawreno.com
850 E. Patriot Blvd., Suite F
Reno, NV 89511
Telephone: (775) 786-7600
Attorneys for Debtor

7

## UNITED STATES BANKRUPTCY COURT

8

### FOR THE DISTRICT OF NEVADA

9

\* \* \* \* \*

10

IN RE:

Case No.: BK-24-12829-nmc
(Chapter 11)

11
12

DTH 215 VENTURE, LLC,

**REDLINE COMPARISON OF
THIRD AMENDED PLAN OF
<u>REORGANIZATION</u>**

13
14

    Debtor.

_____/

Hrg. Date:  TBD
Hrg. Time:  TBD

15

16

    Debtor DTH 215 VENTURE, LLC hereby files a redline, without exhibits, comparing its

17

THIRD AMENDED PLAN OF REORGANIZATION dated February 6, 2025 [ECF No. 221] to

18

its previously filed SECOND AMENDED PLAN OF REORGANIZATION [ECF No. 205].

19

    DATED February 7, 2025.

20

HARRIS LAW PRACTICE LLC

21

_/s/ Norma Guariglia_

22
23

NORMA GUARIGLIA, ESQ.
Attorneys for Debtor

24
25
26
27
28

1

## **CERTIFICATE OF SERVICE**

2       On February 7, 2025, the foregoing document was served via ECF automated system to

3 all parties registered with ECF in this case on the date and time I filed the document with the

4 Court's ECF system.

5       I declare under penalty of perjury that the foregoing is true and correct.

6       Dated February 7, 2025.

7

8                            */s/ Norma Guariglia*

                                 _____

9                            Norma Guariglia

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HARRIS LAW PRACTICE LLC
STEPHEN R. HARRIS, ESQ. NVB 1463
Email: steve@harrislawreno.com
NORMA GUARIGLIA, ESQ. NVB 16244
Email: norma@harrislawreno.com
850 E. Patriot Blvd., Suite F
Reno, Nevada 89511
Telephone:  775.786.7600

*Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE: | Case No.: BK-24-12829-nmc |
| | (Chapter 11) |
| DTH 215 VENTURE, LLC, | |
| Debtor. | Hearing Date:  TBD |
| | Hearing Time:  TBD |
| _____/ | |

**~~SECOND~~THIRD AMENDED PLAN OF REORGANIZATION**

| | |
|---|---|
| Dated: | ~~January 17~~February 6, 2025 |
| Filed by: | DTH 215 Venture, LLC, a Delaware limited liability company, Debtor. |
| Debtor's Counsel: | HARRIS LAW PRACTICE LLC |
| | 850 E. Patriot Blvd., Suite F |
| | Reno, NV 89511 |
| | (775) 786-7600 |

Style Definition: Comment Text
Formatted: Spanish (Spain)
Formatted: French (France)

DTH 215 VENTURE, LLC ("Debtor"), Debtor and Debtor-in-Possession in the above-captioned Chapter 11 case, through its undersigned counsel, pursuant to 11 U.S.C. § 1121(a), hereby proposes the following ~~SECOND~~THIRD **AMENDED PLAN OF REORGANIZATION** and requests confirmation pursuant to the provisions of 11 U.S.C. §§ 1129(a) and/or (b).

**I.**

**INTRODUCTION**

This ~~SECOND~~THIRD AMENDED PLAN OF REORGANIZATION, as may be further amended, supplemented, or modified ("Plan""),, is proposed by the Debtor for the resolution of the Debtor's outstanding creditor obligations. The Plan is offered pursuant to Chapter 11 of Title 11 of the United States Code and should be read in conjunction with the ~~SECOND~~THIRD AMENDED DISCLOSURE STATEMENT, as may be further amended, supplemented, or modified ("Disclosure Statement""),, concerning this Debtor that will be approved by the United States Bankruptcy Court.

Along with this Plan, creditors will receive a Disclosure Statement which has been approved by the United States Bankruptcy Court. The Court has determined that the Disclosure Statement is adequate to enable creditors to make an informed judgment on whether to accept or reject the Plan. The Disclosure Statement fully sets forth the Debtor's background information, an analysis of the Debtor's financial position, and a summary of this Plan. The Debtor has not authorized any statement or representation, such as the value of its property or the amount of its creditors' claims, which is not contained in the Court approved Disclosure Statement.

Information as to the procedures relating to approval, confirmation, and consummation of the Plan may be obtained from counsel for the Debtor, upon written request.

**THE PROVISIONS OF THE CONFIRMED PLAN WILL LEGALLY BIND THE DEBTOR AND ITS CREDITORS, REGARDLESS OF WHETHER THEY HAVE FILED CLAIMS OR HAVE ACCEPTED THE PLAN.** Creditors should thoroughly review both the Plan and the Disclosure Statement before determining whether to accept or reject the proposed Plan.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

2

## II.
### DEFINITIONS
### SCOPE OF DEFINITIONS

For purposes of this Plan, ~~all capitalized terms and otherwise defined terms shall have~~ the ~~meanings assigned to them~~definitions contained in this Article II. shall apply to all uses of the following defined terms herein whether or not such terms are capitalized. Whenever the context requires, such terms shall include the plural number as well as the singular and the female and/or masculine gender as well as the neuter.

1.    ""ACRES" means ACRES Loan Origination, LLC, a Delaware limited liability company.

2.    "ACRES CONSTRUCTION LOAN" means the construction loan made by ACRES to the Debtor under the Construction Loan Agreement and related Construction Loan Note dated August 30, 2021, between ACRES and the Debtor, in the original principal amount of $37,500,000, which construction loan is secured by certain real estate and personal property of the Debtor identified in Proof of Claim No. 25.

3.    "ACRES CLAIM" means the claim of ACRES arising under or in connection with the ACRES Construction Loan and evidenced by Proof of Claim No. 25.

~~1.~~4.    "ADMINISTRATIVE CLAIM~~.~~"  This term shall refer to and mean every claim that is entitled to allowance under Section 503(b) of the Bankruptcy Code or otherwise entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code, arising prior to the Effective Date, including, without limitation: **(a)** any actual, necessary expense preserving the Estate, including, without limitation, expenses necessary or appropriate to carry out, facilitate, or effectuate this Plan; **(b)** any amount required to be paid under Section 365(b) of the Bankruptcy Code in connection with the curing of defaults under assumed executory contracts or unexpired leases; and **(c)** all allowances, including professional fees and costs, approved by the Bankruptcy Court for the Debtor's ~~professionals and professionals employed by any Committee~~Professionals.

5.    ""ADMINISTRATIVE CLAIM BAR DATE" means the deadline for filing requests for payment of Administrative Claims arising prior to the Effective Date, which shall be 30 calendar days after the Effective Date (except as otherwise ordered by the Bankruptcy Court).

2.6.    "ALLOWED ADMINISTRATIVE CLAIM" shall mean" means an Administrative Claim: **(a)** as to which no objection request for payment has been timely filed or, if an objection and which has been filed, such objection has been resolved by the allowance of such Administrative Claim allowed by a Final Order; **(b)** as to which there exists no dispute that it was incurred in the ordinary course of the Debtor and which requires payment in the ordinary course of the business of the Debtor and as to which there is no order of the Bankruptcy Court in effect which prohibits any such payment; or **(c)** which requires payment is expressly allowed pursuant to a the DIP Order or other Final Order.

3.7.    ""ALLOWED CLAIM"" or ""ALLOWED INTEREST" shall mean claims" means any claim (other than a Disputed Claim) against or interest in the Debtor to the extent that—

(a) Proof proof of such claim or interest was–

(i)  timely filed in the Reorganization Case;

(ii)  deemed filed in the Reorganization Case, if such claim or interest appears in the Debtor's schedules filed herein, unless either such claim or interest is scheduled as disputed, contingent, or unliquidated or an inconsistent proof of such claim or interest was filed in the Reorganization Case; or

(iii)  late filed–

(I)  with leave of the Bankruptcy Court; or

(II)  without objection by the Debtor or other party in interest within a time fixed by the Bankruptcy Court; and

(b) (i)  the Debtor does not file an objection to proof of such claim or interest or amend the Debtor's schedules within a time fixed by the Bankruptcy Court; (whether pursuant to this Plan or otherwise); or

(ii)  the claim or interest is allowed by a Final Order; or

(iii)  the claim or interest is allowed under this Plan.

4.8.  ""ALLOWED PRIORITY CLAIM" shall mean" means a Priority Claim which is an Allowed Claim.

5.    "ALLOWED SECURED CLAIM" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Code, to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such set-off, as the case may be.

9.    ""ALLOWED ACRES CLAIM" means the ACRES Claim, which constitutes an Allowed Secured Claim in the amount of $39,084,737.12 pursuant to this Plan and the DIP Order, secured by perfected and enforceable liens and security interests in the Debtor's Assets described in the DIP Order.

10.    "ALLOWED  SUBORDINATEDMECHANIC'S  LIEN  CLAIMS"  means  the Mechanic's Lien Claims listed on Exhibit 4 to the DIP Order.

11.    "ALLOWED  SECURED  CLAIM" shall mean an Allowed" means a Secured Claim arisingwhich is an Allowed Claim.

6.12.  "APPROVED BUDGET" means the 14-week cash flow forecast approved by ACRES and attached as Exhibit 2 to the DIP Order (as updated from any Indebtedness evidenced by or related totime to time in accordance with the terms of the DIP Facility and the claim of a Subordinated Creditor.DIP Order).

7.13.  "DEFINITION OF THE "BALLOT" shall mean" means the Ballot(s) for accepting or rejecting this Plan in a form(s) approved by the Bankruptcy Court.

8.14.  ""BANKRUPTCY CODE"" as used herein refers to Title I of Public Law No. 95-598, as codified in Title 11 of the United States Code, and all amendments thereto.

9.15.  ""BANKRUPTCY COURT" (or "COURT") shall mean" means the United States Bankruptcy Court, for the District of Nevada (Reno, Nevada),, in which the Debtor's Chapter 11 case is pending, such other court as has jurisdiction in this Chapter 11 case, and any court having

competent jurisdiction to hear appeals or certiorari proceedings therefrom.

~~10.    "US TRUSTEE" or "UST" or "OUST" shall mean Tracy Hope Davis, the United States Trustee for Region 17, or any successor United States Trustee as of the relevant time.~~

~~11.~~16. ""BANKRUPTCY RULES~~" shall mean~~" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, including any amendments thereto, which are in effect before and as of the Confirmation Date, and thereafter during the Reorganization Case, to the extent that they are consistent with vested rights under this Plan and the Confirmation Order.

~~12.~~17. ""BUSINESS DAY~~" shall mean~~" means any day except Saturday, Sunday, or a day on which commercial banks in ~~Washoe~~Clark County, Nevada, are authorized or required by law to close.

~~13.~~18. ""CLAIM~~" shall mean~~" means:  **(a)** any right to payment from the Debtor or its Estate, including an Administrative Claim, whether or not such right is reduced to judgment, or is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; and **(b)** any right to an equitable remedy for breach of performance of such breach gives rise to a right to payment from the Debtor or its Estate, including an Administrative Claim, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, secured or unsecured.

~~14.~~19. ""CLAIMANT~~" shall mean~~" means the holder of ~~an Allowed~~a Claim~~ or an Allowed Administrative Claim.~~.

~~15.~~20. ""CLASS~~" shall mean~~" means any class into which Allowed Claims or Allowed Interests are classified pursuant to Article IV.

~~16.    "COMMENCEMENT DATE" (or "PETITION  DATE") shall mean June 5, 2024, which date shall be utilized to determine the cessation of interest on certain claims and the date of commencement of the rights of certain creditors to make claim for administrative expenses and allowances, among other rights that are determined by relation to said date.~~

~~17.~~21. ""CONFIRMATION~~" shall mean~~" means the entry of the Confirmation Order by the ~~United States~~ Bankruptcy Court.

18.22. ""CONFIRMATION DATE" shall mean" means the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

19.23. ""CONFIRMATION ORDER" shall mean" means the Order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code and approving the transactions contemplated herein, which shall be in form and substance acceptable to the proponents and consistent with the DIP Order.

20.24. ""CREDITOR" shall mean" means any entity that has a claim against the Debtor, which claim arose to or before the order for relief concerning the DebtorPetition Date, including any claim that may arise under 11 U.S.C. Sections 502(f), 502(g), 502(h) and 502(i).

21.25. ""DEBTOR" shall mean" means DTH 215 VENTURE, LLC, Debtor and Debtor-in-Possession herein.

22.26. ""DEBTOR'S ASSETS" shall mean" means all assets and property of every kind, nature and description of which the Debtor or its Estate has any right, title or interest, including but not limited to: real property, personal property, including but not limited to bank deposits, instruments, credit of instruments, certificates of deposit and drafts; all executory contracts which are not and have not been rejected; all choses in action; and all claims, demands, causes of action, damages and obligations of any nature whatsoever, known or unknown in law or in equity, including, without limitation, claims or causes of action arising under the Bankruptcy Code (including, without limitation, Sections 362, 510, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code), or under any Nevada statute or regulation.

23.27. ""DEBTOR'S PROFESSIONALS" shall mean" means the law firm of HARRIS LAW PRACTICE LLC, as Debtor's general bankruptcy counsel; and all other professionals retained and employed by the Debtor. pursuant to a Final Order approving such retention and employment.

28. ""DIP FACILITY" means the senior secured superpriority debtor-in-possession financing in the aggregate maximum principal amount of up to $27,880,000, provided by ACRES to the Debtor pursuant to the terms and conditions set forth in the DIP Loan Agreement and subject to the terms and conditions contained in the DIP Order.

29.    "DIP LOAN AGREEMENT" means the Senior Secured Superpriority Debtor-in-Possession Loan Agreement dated [●], 2025, executed by ACRES and Debtor (substantially in the form attached as Exhibit 1 to the DIP Order).

30.    "DIP ORDER" means the *Order: (I) Authorizing The Debtor To (A) Obtain Senior Secured Priming Superpriority Postpetition Financing, (B) Grant Liens And Superpriority Administrative Expense Status, (C) Use Cash Collateral, And (D) Grant Adequate Protection; And (II) Granting Related Relief* [ECF No. 208].

~~24.~~31. "DISCLOSURE STATEMENT~~"~~" means the written THIRD AMENDED DISCLOSURE STATEMENT, as may be amended, modified, or supplemented, with respect to this Plan which is approved by the Bankruptcy Court under Section 1125 of the Bankruptcy Code.

~~25.    "DISPUTED CLAIM" shall mean every claim that is not an Allowed Claim or an Allowed Administrative Claim or to which the Debtor or a Party-in-Interest files an objection before the deadline for objection set forth in this Plan or an operative order of the Bankruptcy Court.~~

32.    ″ "DISPUTED CLAIM" means a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is listed in the Debtor's schedules as zero or as contingent, disputed, or unliquidated and as to which no proof of claim or request for payment of an Administrative Claim has been timely filed (or deemed timely filed) with the Bankruptcy Court; (c) is not listed in the Debtor's schedules and as to which no proof of claim or request for payment of an Administrative Claim has been timely filed (or deemed timely filed) with the Bankruptcy Court; (d) has been withdrawn by agreement of the Debtor and the holder thereof; or (e) has been withdrawn by the holder thereof.

~~26.~~33. "EFFECTIVE DATE ~~of the PLAN and NOTICE of EFFECTIVE DATE" shall mean thirty (30)~~ means ten (10)" calendar days after all of the following have occurred (so long as they then remain in effect): **(a)** this Plan has been confirmed pursuant to the Confirmation Order, and the Confirmation Order is a Final Order and remains in full force and effect without material modification thereof; **(b)** there is not in effect any stay, injunction or restraining order or any other order of any kind which has been issued by a Court of competent jurisdiction or other

governmental entity staying, restricting or prohibiting the effectuation of this Plan; and **(c)** there is not in effect any statute, rule, regulation or order enacted, promulgated or entered which is applicable to the effectuation of this Plan of which results in the consequences referred to in subsection (b) immediately above. Within two business days of the Effective Date, the Reorganized Debtor or any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date with the Bankruptcy Court ~~indicating that the conditions precedent in this section have occurred~~, identifying the Effective Date, and indicating that it has occurred.

~~27.~~34.   ""EQUITY ~~HOLDINGS" shall mean~~INTERESTS" or "INTERESTS" means the ~~Debtor's equity members'~~limited liability company interests ~~retained~~ in the ~~Plan, after payment of all allowed creditors' claims~~Debtor.

~~28.~~35.   ""ESTATE~~" shall mean~~" means the ~~Estate~~bankruptcy estate of the Debtor created in the Reorganization Case pursuant to Section 541 of the Bankruptcy Code.

~~29.~~36. ""EXPIRATION DATE~~" shall mean~~" means the last date determined by the Bankruptcy Court for the casting of Ballots, which date shall be acceptable to the proponents.

~~30.~~37.   ""FINAL ORDER~~" shall mean~~" means a final order, judgment or other decree of the Bankruptcy Court or other Court of competent jurisdiction which has not been vacated, reversed, saved, modified or amended **(a)** as to which **(i)** the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for certiorari, request for review or rehearing is pending, or **(ii)** if appeal, review, rehearing or certiorari of the order has been sought, the order has been affirmed or the request for review, rehearing or certiorari has been denied, the time to seek a further appeal, review, rehearing or certiorari has expired, and **(b)** as a result of which such orders shall become final and not appealable in accordance with applicable law.

38.   "LIEN" ~~shall mean~~"GILLETT SETTLEMENT AGREEMENT" means the settlement agreement attached as Exhibit A to the Gillett Settlement Order.

39.   "GILLETT SETTLEMENT ORDER" means *Order Granting Motion For Order Approving Debtor's Compromise And Settlement Of Claims With Gillett Construction, LLC Under Fed. R. Bankr. P. 9019(A)* [ECF No. 207].

31.40.  "LIEN" has the meaning set forth in Section 101(37) of the Bankruptcy Code and shall include a charge or encumbrance against or interest in property of the Debtor or the Estate, including Debtor's PropertyAssets, to secure the payment of a debt or performance of an obligation, and includes any right of setoff under Section 553 of the Bankruptcy Code.

41.  "MECHANIC'S LIEN CLAIMS" shall have the meaning set forth in Section IV.C of this Plan.

32.42.  "PERSON" includes individual, partnership, corporation, association, joint stock company, joint venture, estate, trust, unincorporated organization, any governmental unit, or political subdivision thereof, or other entity, and all of the respective heirs, personal representatives, successors, and assigns.

33.43.  "PETITION DATE" shall mean" means June 5, 2024.

34.44.  "PLAN"" means thethis THIRD AMENDED PLAN OF REORGANIZATION, in the form filed by the proponent and any amendments or modifications thereof or supplements thereto filed by the proponent and permitted by Article X hereof or the Bankruptcy Court.

35.45.  "PRIORITY CLAIM" shall mean" means a claim (other than an Administrative Claim) entitled to priority under Section 507(a)(2)-(8) of the Bankruptcy Code.

46.  "PROJECT" means the real estate and personal property associated with the property located at 215 S. Water Street, Henderson, Nevada 89015.

36.47.  "PROPONENT" shall mean" means the Debtor acting as the proponent of this Plan.

37.48.  "PRO RATA SHARE" shall mean" means the proportion that an Allowed Claim in a particular class bears to the aggregate amount of all Allowed Claims in such class.

38.  "PURCHASER" shall mean the transferee(s) of a voluntary transfer(s).

39.49.  "RECORD DATE" shall mean" means, for purposes of voting, the date of entry by the Bankruptcy Court of the Order Approving the Disclosure Statement and, for purposes of distribution, the Confirmation Date.

40.50.  "REORGANIZATION CASE" shall mean" or "CASE" means the Debtor's case under Chapter 11 of the Bankruptcy Code, which is currently pending before the Bankruptcy

**Formatted:** Font: Not Italic

Court as Case No. 24-12829-nmc.

~~41.~~51.  ~~""REORGANIZED DEBTOR" shall mean~~" means DTH 215 VENTURE, LLC, a Delaware limited liability company, on and after the Effective Date of the Plan.

52.  ~~""SECURED CLAIM" shall mean~~" means any claim (a) if secured by a lien ~~which is valid, perfected, enforceable, and not avoidable.  If the value of the creditors',~~ security interest ~~and the Estate's~~or other charge against or interest in the Debtor's Assets, to the extent of the value of such holder's interest in such property ~~securing a claim is not sufficient to satisfy such claim, then~~(i) as set forth in this Plan, or (ii) as determined by a Final Order in accordance with ~~Section~~Sections 506 ~~of the Bankruptcy Code and subject to Section~~(a) or 1111(b) of the Bankruptcy Code, ~~such claim shall be deemed~~or (b) if subject to ~~be an unsecured claim under this Plan~~a right of setoff, to the extent of ~~any insufficiency in~~the amount subject to such holder's setoff rights under Section 553 of the Bankruptcy Code.

~~42.~~53. "US TRUSTEE" or "UST" means Tracy Hope Davis, the ~~value~~United States Trustee for Region 17, or any successor United States Trustee as of the ~~creditors' interest.~~relevant time.

~~43.~~54. ~~""UNSECURED CLAIM" shall mean~~" means any claim which is not a Secured Claim, Priority Claim, Administrative Claim, or an unclassified claim or the kind described in Section 507(a)(7) of the Bankruptcy Code.

~~44.    "UNSECURED CREDITORS' COMMITTEE" OR "COMMITTEE" means any Official Committee of Unsecured Creditors appointed by the United States Trustee in the Debtor's Reorganization Case, as modified by the addition or removal of members from time to time by the United States Trustee or Bankruptcy Court.~~

A term used in this Plan that is not defined in this Plan but that is used in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code.

### III.

### ADMINISTRATIVE AND UNCLASSIFIED CLAIMS

### ADMINISTRATIVE CLAIMS:

~~All costs and expenses of administration in this case, including any actual and necessary~~

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

expenses of preserving or liquidating the assets of the Debtor's Estate, all allowances, including professional fees and costs, approved by the Bankruptcy Court, and any other costs and expenses entitled to priority pursuant to 11 U.S.C. §§ 507(a)(1) and (2) of the Bankruptcy Code and 28 U.S.C. § 1930, shall be paid in full on or before the Effective Date of the Plan from the DIP Facility, new loan proceeds, leasing revenues, or sale proceeds, unless the administrative claimants agree to other payment arrangements. The holders of these claims include the attorneys, accountants, and other employed professionals of the Debtor, unpaid post-petition accounts payable (if any), estimated cure amounts for all assumed executory contracts and unexpired leases, and all fees to be paid to the Office of the United States Trustee. The estimated administrative expenses for the Debtor's reorganization proceeding consist of the following:

##

##

##

Unless otherwise agreed to by a holder of an Allowed Administrative Claim and the Debtor, all Allowed Administrative Claims shall be paid in full (a) if Allowed on or before the Effective Date, on or promptly following the Effective Date, (b) if Allowed after the Effective Date, on or promptly following the date of allowance, (c) if based on liabilities as to which there exists no dispute that the Debtor incurred in the ordinary course, in the ordinary course of business according to the terms and conditions of the particular transaction, or (d) at such time and upon such terms as set forth in a Final Order. Prior to repayment in full of the DIP Financing and the Allowed ACRES Claim, any payment of Allowed Administrative Claims must be in accordance with the DIP Order and the Approved Budget. The following are Debtor's current estimate of Administrative Claims that may be incurred prior to the Effective Date (provided, however, that the listing of these Administrative Claims herein shall not constitute any allowance (or deemed allowance) thereof and, except for the Administrative Claim of ACRES related to the DIP Facility, none of these has been Allowed by the Bankruptcy Court):

| Anticipated Claim Amount | Description |
|---|---|
| $0.00 | Fees that are owed the U.S. Trustee's Office for the applicable quarters of 2024 and 2025 prior to the Confirmation Date [Debtor anticipates that payment is anticipated to of these fees will be made when due.] |
| Unknown | Estimated administrative professional legal fees and costs for the Debtor's general bankruptcy attorneys, Harris Law Practice LLC (estimated at $150,000 to $250,000), calculated as of the Confirmation Date. Of this estimated amount). Currently, $0.00 of these fees and costs has been approved by the Bankruptcy Court or included in an interim application for compensationthe Approved Budget. |
| Unknown | Estimated administrative professional legal fees and costs for the Debtor's special counsel, Greenberg Traurig, LLP (estimated at $100,000 not including expert witness fees), calculated as of the Confirmation Date. Of this estimated amount), $0.00 of these fees and costs has already been approved by the Bankruptcy Court on an interim basis and paid by the Debtor included in the Approved Budget. |
| $1,109,000 | Estimated fees payable to Debtor's financial advisors, Ackman-Ziff Real Estate Group, LLC ("Ackman Ziff") and MB Bear Capital, LLC, forwho were retained by the Debtor to assist with obtaining post-petition financing for the Debtor. The DIP Facility includes anCurrently, $0 of these fees has been approved by the Bankruptcy Court, and the Approved Budget expense ofcurrently allocates $275,000 to pay Ackman-Ziff's fees, subject to Bankruptcy Court approval of such fees. |
| $Unknown | Potential leasing commissions and expenses payable to Debtor's Property leasing agents before the ConfirmationEffective Date. |
| $0.00 | Post-petition accounts payable incurred in the ordinary course of business[all post-petition administrative expenses incurred in the ordinary course of business and included in the Approved Budget are expected to be paid in full in the ordinary course of business prior to the ConfirmationEffective Date]. |

Formatted: Centered

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

| $496,000.00 | Post-petition unsecured loan advances made to the Debtor ~~in the ordinary course of business under 11 U.S.C. § 364(a)~~ by its member, Tiger QOF Holdings, LLC, for payment of immediate necessary expenses like insurance and property taxes to preserve the Project. This unsecured loan accrues interest at 9% per annum and matured on December 31, 2024. The Debtor alleges that these loan advances are authorized under 11 U.S.C. § 364(a). ACRES disputes that this amount was incurred by the Debtor in the ordinary course of business, and repayment of this amount has not been approved by the Bankruptcy Court or included in the Approved Budget. |
|---|---|
| $27,880,000 | Estimated super-priority administrative claim of ACRES under the DIP Facility. Under the DIP Facility, ACRES has agreed that payment in full of the DIP Facility ~~principal balance~~ is not due until the ~~DIP Facility~~ Maturity Date ~~expected to be no later than eleven months~~ (as defined in the DIP Loan Agreement), which may not occur until after the ~~Closing~~ Effective Date. ~~Debtor expects to pay the monthly accrued~~ The DIP Order addresses payment of interest ~~on the DIP Facility to ACRES from advances held in an interest reserve~~ and other fees under the DIP Facility ~~until~~ prior to and after the Effective Date. The DIP Order also addresses repayment of the DIP Facility on and after the Maturity Date. |

~~Professional fees~~ Fees of the Debtor's Professionals shall continue to accrue up through and subsequent to the ~~Confirmation~~ Effective Date, with all final pre-~~Confirmation~~ Effective Date fees and costs subject to Bankruptcy Court approval and, to the extent payable prior to the repayment of the DIP Facility and the Allowed ACRES Claims, in accordance with the DIP Order and the Approved Budget.

**UNCLASSIFIED PRIORITY CLAIMS:**

A.    **Description.** ~~The Debtor's priority claims are as follows:~~

| ~~Name~~ | ~~Scheduled Amount~~ | ~~Proof of Claim Amount~~ | ~~Allowed Priority Amount~~ |
|---|---|---|---|
| ~~McKeon Door of Nevada, Inc.~~ | ~~None~~ | ~~$6,853.75~~ | ~~$0.00 (incorrectly filed claim for wages and employee benefits).~~ |

A.    Pursuant to the Plan, the treatment and disposition of the allowed unclassified priority claims, estimated at $0.00 pursuant to a filed proof of claim, will be as follows: Any claim discrepancy will be resolved by the claim objection process as set forth in Article XVII of the Disclosure Statement, with the stipulated amount and/or Court deemed amount owing used to calculate that particular creditors' allowed claim being paid by the Debtor.  All unclassified priority creditorsAllowed Priority Claims shall be paid 100% of their allowed claim amount, with statutory interest thereon, over a one (1) year time period commencing on the Effective Date of the Plan, and, to the extent payable prior to the repayment of the DIP Financing and the Allowed ACRES Claim, in accordance with the Approved Budget. The payments shall be made monthly, equally amortized over twelve (12) months, with statutory interest accrued thereon, but without any penalties. At the option of the Debtor, any allowed priority claims may be paid on a shortened time schedule from the one (1) year described hereinabove. In the event the Debtor fails to make the payments as set forth hereinabove, the holders of allowed priority creditorsclaims, if any, shall have the right to proceed with any administrative remedies available to them, thirty (30) business days after written notice of default has been given to the Debtor and its attorneys, Stephen R. Harris, Esq. and Norma Guariglia, Esq.

## IV.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, known claims against the Estate have been divided into the following classifications for purposes of administration and voting on the Plan:

A.    **CLASS 1 CLAIM [ALLOWED SECURED CLAIM OF ACRES]**:  This Class consists of the claim amount ultimately allowed by agreement as part of the DIP Facility arising from the Construction Loan Agreement and related Construction Loan Note dated August 30, 2021, between ACRES Loan Origination, LLC, as Administrative Agent, and the Debtor, in the principal amount of $37,500,000 ("Construction Loan") secured by a deed of trust and Security Agreement recorded against the Project and related personal property, including loan reserves

1 held by ACRES. Pursuant to ACRES' proof of claim, the unpaid secured claim amount as of the

2 Petition Date is $39,084,737.12.

3     **A.**    **CLASS 1 CLAIM [ACRES CLAIM]**:  This Class consists of the ACRES Claim.

4     **B.**    **CLASS 2 CLAIMS [~~ALLOWED~~OTHER SECURED ~~GOVERNMENT~~**

5 **~~STATUTORY LIENS~~CLAIMS]**:  This Class consists of ~~the allowed~~ any Secured Claims other

6 than the ACRES Claim and the Mechanic's Lien Claims.

7     **C.**    **CLASSES 3A THROUGH 3EE CLAIMS [MECHANIC'S LIEN CLAIMS]:**

8 These 31 separate classes consist of the secured claims ~~consisting~~ of the claimants with

9 ~~government statutory~~mechanic's liens ~~against~~recorded against the Project under Nevada law for

10 goods and services that benefited the Project (the "Mechanic's Lien Claims").[1]  The estimated

11 Mechanic's Lien Claims, calculated as of the Petition Date, are detailed as follows:

| Class | Creditor Name | Scheduled Amount | Proof of Claim Amount |
|---|---|---|---|
| 3A | AKM Grading | $157,326.22 | |
| 3B | Academy Stone & Tile, Inc. | $119,400.45 | $119,400.45 |
| 3C | Aluma Systems Concrete Construction of California | $129,812.81 | $129,812.81 |
| 3D | American Eagle Ready Mix | Unknown | $35,551.86 |
| 3E | Atlas Mechanical, Inc. | $282,180.80 | $282,180.80 |
| 3F | Brightview Landscape Development, Inc. | $125,801.59 (Unsecured) | $152,179.80 |
| 3G | Capitol Builders Hardware Inc. | $253,576.49 | $253,576.49 |
| 3H | CMC Steel Fabricators | $178,472.59 | |
| 3I | Concrete Accessories, Inc. | $60,470.05 | |
| 3J | ControlWorks, Inc. | $58,302.88 | $58,302.88 |
| 3K | Ferguson Fire & Fabrication, Inc. | Unknown | $21,275.35 |
| 3L | Focus Plumbing LLC | $213,527.38 | $351,533.27 |
| 3M | Gillett Construction | $11,390,787.88 | $12,773,419.50 |
| 3N | Global Corporate Services | Unknown | |

28 _____

[1] The Debtor reserves all rights with respect to the allowed amount of each Mechanic's Lien Claim.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

| 3O | Helix Electric | $1,887,489.38 | $1,887,489.38 |
| 3P | J-Cord LLC | $238,425.42 | |
| 3Q | Las Vegas Toilet Rentals | | $30,135.00 (recorded lien/no POC) |
| 3R | L&W Supply Corporation | $128,010.36 | $124,188.55 |
| 3S | NDX, LLC | Unknown | $24,952.92 |
| 3T | Next Century Rebar, LLC | $105,296.00 | $105,296.00 |
| 3U | One Stop 4 Flooring, LLC | $337,648.74 | $350,000.00 |
| 3V | Par 3 Landscape and Maintenance, Inc. | $0.00 (Unsecured) | $14,698.00 |
| 3W | PGS Westside II, Inc. | $128,010.36 | $128,010.36 |
| 3X | PPG Architectural Finishes, Inc. | $16,959.04 | $16,959.04 |
| 3Y | Reliable Crane Services, LLC | $112,123.87 | $131,443.87 |
| 3Z | Residential Fire Protection dba On Guard (should be included in Gillett and Helix claims) | $65,395.19 (Unsecured) | $456,211.78 |
| 3AA | Ryerson Concrete LLC | $21,570.00 | |
| 3BB | Southern Nevada Welding | $101,316.99 | $101,316.99 |
| 3CC | Supply Network, Inc. dba Viking Supplynet | $46,058.40 | $46,058.40 |
| 3DD | United Rentals (North America) | $144,683.82 | |
| 3EE | UES Professional Solutions 30, LLC fka Nova Geotechnical dba Universal Engineering Services | $25,242.50 | $25,242.50 |

**D.    CLASS 4 CLAIMS [UNSECURED TRADE CLAIMS OF LESS THAN $20,000]:** This administrative convenience Class consists of the general unsecured claims of trade creditors of less than $20,000 each for goods and services that benefited the Project or the Debtor's Project.[2]  The Class 2 Claims business operations.[3] The estimated Unsecured Claims of

---

[2] The Debtor reserves all rights with respect to the allowed amount of each claim.

[3] The Debtor reserves all rights with respect to the allowed amount of each unsecured claim of trade creditors.

trade creditors, calculated as of the Petition Date, are detailed as follows:

| Creditor Name | Scheduled Amount | Proof of Claim Amount |
|---|---|---|
| 5 G Fire, LLC | $0.00 | |
| Affordable Striping & Sealing, LLC | $0.00 | $2,912.00 |
| Albright Stoddard Warnick & Albright | $0.00 | |
| Aries Consultants Inc. | $9,795.00 | |
| Cherry Bekaert Advisory, LLP | $7,652.50 | $7,996.87 |
| Clark County Legal News | $40.00 | |
| Cogency Global | $205.00 | |
| Cox Communications Las Vegas, Inc. | $6,398.77 | |
| D23 Systems LLC | $7,086.76 | |
| Eco Achiever | $9,800.00 | |
| Envida | $5,585.10 | |
| Fox Rothschild | $6,932.50 | $6,932.50 |
| Greenberg Traurig, LLP | $15,000.00 | $18,789.00 |
| Haus of Reed | $0.00 | |
| Henri Specialties Co., Inc. | $0.00 | |
| J.S. & S Inc. | $0.00 | |
| JAMS, Inc. | $2,312.00 | |
| Jeffrey M. Cruden | $0.00 | |
| Kaempfer Crowell | $1,994.50 | |
| Killian Construction Company | $16,820.49 | |
| Lanak & Hanna, P.C. | $0.00 | |
| Lochsa Engineering | $10,000.00 | $10,000.00 $2,000.00 |
| Luxer One | $0.00 | |
| Lynch Law Practice PLLC | $0.00 | |
| Machabee Office Environments | $750.00 | |
| McKeon Door of Nevada, Inc. | $17,471.40 | $17,471.40 |
| Novogradac | $7,855.25 | |
| R&M Law Group, LLC | $300.00 | |
| Real Page | $329.65 | |

| | Creditor Name | Amount |
|---|---|---|
| 1 | Salsbury Industries | $0.00 |
| 2 | Schindler Elevator Corporation | $0.00 |
| 3 | Schnitzer Johnson & Watson, Chtd. | $0.00 |
| 4 | Scott Zemp Masonry, Inc. | $0.00 |
| 5 | Sportswork Global LLC | $0.00 |
| 6 | The Big Sipper, LLC | $6,045.00 |
| 7 | Wallace Enterprises L.L.C. | $14,960.00 |
| 8 | Wayfair | $19,375.40 |
| 9 | Websquad | $8,980.00 |
| 10 | Wucherer, Thomas A. | $0.00 |
| 11 | Zillow, Inc. | $7,700.00 |

**B.E.   CLASS 5 CLAIMS [UNSECURED CLAIMS]:**  This Class consists of the Debtor's unsecured claims not included in Class 4 for goods, services, loans, and extensions of credit that benefited the Project or business operations.[4]  The estimated Unsecured Claims not included in Class 4, calculated as of the Petition Date, are detailed as follows:

| Creditor Name | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| Amaya Roofing & Waterproofing, Inc. | $0.00 | | $67,241.82 |
| Certified Post Tension, LLC | $0.00 | | $32,531.45 |
| Concrete Accessories, Inc. | $60,470.05 | | |
| City of HendersonCRF Solutions | Unknown | | Unknown |
| DPG Trust by Darren Gillett | $2,000,000 | | $2,252,978.98 |
| DTH 215 Development, LLC | $2,714,371.81 | | $3,247,004.95 |
| Finnco Services, Inc. | $61,761.13 | | $145,000.00 |
| First American Title Insurance Co. | $0.00 | | |
| Free2Be LLC | | | $90,222.91 |
| Holden Family, LLC | $2,727,482.14 | | $1,771,265.72 |
| Jones Lovelock | $130,949.98 | | $40,523.49 $70,412.99 |

---

[4]  The Debtor reserves all rights with respect to the allowed amount of each unsecured claim.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

| Claimant | | | |
|---|---|---|---|
| ~~City of~~ <u>Legacy</u> Henderson ~~Utilities~~ <u>QOF LLC</u> | ~~Unknown~~<u>$2,714,371.81</u> | <u>$2,883,220.45</u> | ~~Unknown~~ |
| <u>Legacy Henderson QOF LLC</u> | | | <u>$1,366,986.30</u> |
| <u>McIntosh Communications Inc.</u> | <u>$92,640.38</u> | | |
| ~~Clark County Treasurer~~<u>MDC Interior Solutions</u> | Unknown | | ~~Unknown~~ |
| <u>NVision Glass, Inc.</u> | <u>$164,667.30</u> | | |
| <u>Parkway Tavern/Pkwy Management LLC</u> | <u>$31,297.00</u> | | <u>$234,778.49</u> |
| <u>R.L. Cushing Millwork</u> | <u>$113,949.36</u> | | |
| <u>Strada LV, LLC</u> | <u>$308,585.56</u> | | <u>$270,580.06</u> |
| <u>Three Lock Box</u> | <u>$78,279.00</u> | | <u>$78,279.00</u> |
| <u>Unitech Electronics Inc.</u> | <u>$35,361.07</u> | | |
| <u>Vision Sign Inc.</u> | <u>$43,262.50</u> | | |
| <u>WDG Limited</u> | <u>$50,166.42</u> | | <u>$67,202.70</u> |
| <u>West Coast Wellness Equipment</u> | <u>$43,989.01</u> | | |
| <u>Westcorp Management Group One, Inc.</u> | <u>$36,900.43</u> | | |
| <u>Worth Group Architects</u> | <u>$114,059.86</u> | | |

~~**C.     CLASSES 3A THROUGH 3DD CLAIMS [ALLOWED SECURED MECHANIC'S LIEN CLAIMS]:** These 30 separate classes consist of the allowed secured claims of the claimants with mechanic's liens recorded against the Debtor's Project under Nevada law for goods and services that benefitted the Debtor's Project.[5] These mechanic's lienholders recorded liens against the Project after ACRES recorded its deed of trust, but the mechanic's lienholders allege that their liens are superior to ACRES under Nevada law as a result of the timing of the start of visible construction at the Project. Gillett is also responsible for payment to~~

---

~~[5] The Debtor reserves all rights with respect to the allowed amount of each claim and to dispute the extent, validity, and priority of liens of ACRES and the mechanic's lienholders if for any reason the DIP Facility does not close and/or the liens are not satisfied and paid as required under the Settlement Agreement with Gillett. Some alleged mechanic's lienholders did not provide the Debtor with advance notice of intent to lien as required under Nevada law for residential projects. The Debtor believes other lien deficiencies exist which impair the various alleged lien priorities.~~

its subcontractors who have recorded mechanic's liens against the Project. The Class 3A through Class 3DD Claims, calculated as of the Petition Date, are detailed as follows:

| Class | Creditor Name | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|---|
| 3A | AKM Grading | $157,326.22 | | Unknown |
| 3B | Aluma Systems Concrete Construction of California | $129,812.81 | $129,812.81 | Unknown |
| 3C | American Eagle Ready Mix | Unknown | $35,551.86 | Unknown |
| 3D | Atlas Mechanical, Inc. | $282,180.80 | $282,180.80 | Unknown |
| 3E | Brightview Landscape Development, Inc. | $125,801.59 (Unsecured) | $152,179.80 | Unknown |
| 3F | Capitol Builders Hardware Inc. | $253,576.49 | $253,576.49 | Unknown |
| 3G | CMC Steel Fabricators | $178,472.59 | | Unknown |
| 3H | Concrete Accessories, Inc. | $60,470.05 | | Unknown |
| 3I | ControlWorks, Inc. | $58,302.88 | $58,302.88 | Unknown |
| 3J | CRF Solutions | Unknown | | Unknown |
| 3K | Ferguson Fire & Fabrication, Inc. | Unknown | $21,275.25 | Unknown |
| 3L | Focus Plumbing LLC | $213,527.38 | $351,533.27 | Unknown |
| 3M | Gillett Construction | $11,390,787.88 | $12,773,419.50 | $10,839,222.97 |
| 3N | Global Corporate Services | Unknown | | Unknown |
| 3O | Helix Electric | $1,887,489.38 | $1,887,489.38 | Unknown |
| 3P | J-Cord LLC | $238,425.42 | | Unknown |
| 3Q | L&W Supply Corporation | $128,010.36 | $124,188.55 | Unknown |
| 3R | NDX, LLC | Unknown | $24,952.92 | Unknown |
| 3S | Next Century Rebar, LLC | $105,296.00 | $105,296.00 | Unknown |
| 3T | One Stop 4 Flooring, LLC | $337,648.74 | $350,000.00 | Unknown |
| 3U | Par 3 Landscape and Maintenance, Inc. | $0.00 (Unsecured) | $14,698.00 | Unknown |
| 3V | PGS Westside II, Inc. | $128,010.36 | $128,010.36 | Unknown |

| | | | | |
|---|---|---|---|---|
| 3W | PPG Architectural Finishes, Inc. | $16,959.04 | $16,959.04 | Unknown |
| 3X | Reliable Crane Services, LLC | $112,123.87 | $131,443.87 | Unknown |
| 3Y | Residential Fire Protection dba On Guard (should be included in Gillett and Helix claims) | $65,395.19 (Unsecured) | $456,211.78 | $0.00 |
| 3Z | Ryerson Concrete LLC | $21,570.00 | | Unknown |
| 3AA | Southern Nevada Welding | $101,316.99 | $101,316.99 | Unknown |
| 3BB | Supply Network, Inc. dba Viking Supplynet | $46,058.40 | $46,058.40 | Unknown |
| 3CC | United Rentals (North America) | $144,683.82 | | Unknown |
| 3DD | UES Professional Solutions 30, LLC fka Nova Geotechnical dba Universal Engineering Services | $25,242.50 | $25,242.50 | $25,242.50 |

D.    **CLASS 4 CLAIMS [ALLOWED UNSECURED TRADE CLAIMS OF LESS THAN $20,000]:** This administrative convenience Class consists of the Debtor's allowed general unsecured trade claims of less than $20,000 each for goods and services that benefitted the Debtor's Project or business operations.[6] Gillett is also responsible for payment to its subcontractors who have not recorded mechanic's liens against the Project but who may assert unsecured claims against the Debtor. Gillett's alleged claim against the Debtor also includes its subcontractors' claims, thus possibly resulting in some duplicative unsecured claims. The Class 4 Claims, calculated as of the Petition Date, are detailed as follows:

| Creditor Name | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| 5 G Fire, LLC | $0.00 | | $0.00 |
| Affordable Striping & Sealing, LLC | $0.00 | $2,912.00 | $0.00 |
| Albright Stoddard Warnick & Albright | $0.00 | | |
| Aries Consultants Inc. | $9,795.00 | | Unknown |
| Cherry Bekaert Advisory, LLP | $7,652.50 | $7,996.87 | $7,652.50 |

---

[6] The Debtor reserves all rights with respect to the allowed amount of each claim.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

| | | | | |
|---|---|---|---|---|
| 1 | Clark County Legal News | $40.00 | | $40.00 |
| 2 | Cogency Global | $205.00 | | $205.00 |
| 3 | Cox Communications Las Vegas, Inc. | $6,398.77 | | $6,398.77 |
| 4 | D23 Systems LLC | $7,086.76 | | $0.00 |
| 5 | Eco Achiever | $9,800.00 | | $9,800.00 |
| 6 | Envida | $5,585.10 | | $5,585.10 |
| 7 | Fox Rothschild | $6,932.50 | $6,932.50 | Unknown |
| 8 | Greenberg Traurig, LLP | $15,000.00 | $18,789.00 | $18,789.00 |
| 9 | Haus of Reed | $0.00 | | $0.00 |
| 10 | Henri Specialties Co., Inc. | $0.00 | | $0.00 |
| 11 | J.S. & S Inc. | $0.00 | | $0.00 |
| 12 | JAMS, Inc. | $2,312.00 | | $2,312.00 |
| 13 | Jeffrey M. Cruden | $0.00 | | $0.00 |
| 14 | Kaempfer Crowell | $1,994.50 | | $1,994.50 |
| 15 | Killian Construction Company | $16,820.49 | | $16,820.49 |
| 16 | Lanak & Hanna, P.C. | $0.00 | | $0.00 |
| 17 | Lochsa Engineering | $10,000.00 | $10,000.00 $2,000.00 | $10,000.00 |
| 18 | Luxer One | $0.00 | | $0.00 |
| 19 | Lynch Law Practice PLLC | $0.00 | | $0.00 |
| 20 | Machabee Office Environments | $750.00 | | $750.00 |
| 21 | McKeon Door of Nevada, Inc. | $17,471.40 | $17,471.40 | Unknown |
| 22 | Novogradac | $7,855.25 | | Unknown |
| 23 | R&M Law Group, LLC | $300.00 | | $300.00 |
| 24 | Real Page | $329.65 | | $329.65 |
| 25 | Salsbury Industries | $0.00 | | $0.00 |
| 26 | Schindler Elevator Corporation | $0.00 | | $0.00 |
| 27 | Schnitzer Johnson & Watson, Chtd. | $0.00 | | $0.00 |
| 28 | Scott Zemp Masonry, Inc. | $0.00 | | $0.00 |
| | Sportswork Global LLC | $0.00 | | $0.00 |
| | The Big Sipper, LLC | $6,045.00 | | $6,045.00 |
| | Wallace Enterprises L.L.C. | $14,960.00 | | $14,960.00 |

| | | | |
|---|---|---|---|
| Wayfair | $19,375.40 | | $19,375.40 |
| Websquad | $8,980.00 | | $8,980.00 |
| Wucherer, Thomas A. | $0.00 | | $0.00 |
| Zillow, Inc. | $7,700.00 | | $7,700.00 |

**E.    CLASS 5 CLAIMS [ALLOWED UNSECURED CLAIMS]:**  This Class consists of the Debtor's allowed general unsecured claims for goods, services, loans, and extensions of credit that benefitted the Debtor's Project or business operations.[7]  Gillett is also responsible for payment to its subcontractors who have not recorded mechanic's liens against the Project but who may assert unsecured claims against the Debtor. Gillett's alleged claim against the Debtor also includes its subcontractors' claims, thus resulting in some potentially duplicative unsecured claims. The Class 5 Claims, calculated as of the Petition Date, are detailed as follows:

| Creditor Name | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| Academy Stone & Tile, Inc. | $119,400.45 (Secured) | $119,400.45 | Unknown |
| Amaya Roofing & Waterproofing, Inc. | $0.00 | $67,241.82 | Unknown |
| Certified Post Tension, LLC | $0.00 | $32,531.45 | Unknown |
| Concrete Accessories, Inc. | $60,470.05 | | $0.00 |
| DPG Trust by Darren Gillett | $2,000,000 | $2,252,978.98 | $2,252,978.98 |
| DTH 215 Development, LLC/ | $2,714,371.81 | $3,247,004.95 | $Unknown |
| Finnco Services, Inc. | $61,761.13 | $145,000.00 | Unknown |
| First American Title Insurance Co. | $0.00 | | $0.00 |
| Free2Be LLC | | $90,222.91 | Unknown |
| Holden Family, LLC | $2,727,482.14 | $1,771,265.72 | $1,771,265.72 |
| Jones Lovelock | $130,949.98 | $40,523.49 $70,412.99 | Unknown |
| Legacy Henderson QOF LLC | $2,714,371.81 | $2,883,220.45 | Unknown |
| Legacy Henderson QOF LLC | | $1,366,986.30 | $1,366,986.30 |

---

[7]  The Debtor reserves all rights with respect to the allowed amount of each claim.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

24

| | | | |
|---|---|---|---|
| McIntosh Communications Inc. | $92,640.38 | | Unknown |
| MDC Interior Solutions | Unknown | | Unknown |
| NVision Glass, Inc. | $164,667.30 | | Unknown |
| Parkway Tavern/Pkwy Management LLC | $31,297.00 | $234,778.49 | Unknown |
| | | | |
| R.L. Cushing Millwork | $113,949.36 | | Unknown |
| Strada LV, LLC | $308,585.56 | $270,580.06 | $270,580.06 |
| Three Lock Box | $78,279.00 | $78,279.00 | $78,279.00 |
| Unitech Electronics Inc. | $35,361.07 | | $35,361.07 |
| | | | |
| Vision Sign Inc. | $43,262.50 | | $43,262.50 |
| WDG Limited | $50,166.42 | $67,202.70 | $67,202.70 |
| West Coast Wellness Equipment | $43,989.01 | | $43,989.01 |
| Westcorp Management Group One, Inc. | $36,900.43 | | $36,900.43 |
| Worth Group Architects | $114,059.86 | | Unknown |

**F.    CLASS 6 EQUITY INTERESTS OF DTH 215 VENTURE, LLC:** This Class consists of the equity interests in DTH 215 Venture, LLC existing on the Petition Date as disclosed in the filed *List of Equity Security Holders* [ECF No. 10], as may be adjusted by corrections to Debtor's internal financial and tax records.

V.

<strong>TREATMENT OF CLASSES</strong>

A.    CLASS 1 CLAIM [ALLOWED SECURED CLAIM OF ACRES]:  The Class 1 secured claim of ACRES in the amount allowed by agreement as part of the DIP Facility (currently estimated by ACRES at $39,084,737.12) shall be paid as follows: ACRES will retain its liens as they existed on the Petition Date, except that the priority of such prepetition liens are modified by the DIP Facility liens which will be perfected in a senior priority position to ACRES' Class 1 Claim.

The Debtor will be required to maintain insurance coverage on the Project as currently

described in the Construction Loan, except as modified by the DIP Facility or by ACRES' consensual agreement.

ACRES' Class 1 claim will be modified by agreement between the Debtor and ACRES (and still subject to finalization of terms) so that accrued pre-petition interest calculated at the contract non-default rate is expected to be paid as an adequate protection payment upon closing of the DIP Facility. The Class 1 claim shall then continue to accrue post-petition pendency and post-confirmation interest at the current non-default contract rate under the Construction Loan, with such monthly accrued interest to be paid to ACRES as adequate protection payments from advances to the Debtor under the DIP Facility until the Maturity Date. The entire allowed unpaid Class 1 principal balance plus accrued interest and fees shall be due and payable upon the earlier of a sale or permanent loan refinance of the Project or eleven months after the Closing Date of the DIP Facility, unless otherwise agreed to by ACRES and the Debtor. All other terms of the Construction Loan shall remain unchanged except as otherwise modified herein, by agreement of the Debtor and ACRES, or as a result of the DIP Facility.

**A.    CLASS 1 CLAIM [ACRES CLAIM]**:   The Allowed ACRES Claim shall be treated as follows: (a) the Debtor will provide the adequate protection provided in Paragraph 15 of the DIP Order until the Allowed ACRES Claim is paid in full; (b) ACRES will retain all liens and security interests granted under the loan documents executed under or in connection with the ACRES Construction Loan, including those loan documents identified in Paragraph D of the DIP Order, and same shall remain effective and enforceable in accordance with the DIP Order until the Allowed ACRES Claim is paid in full; (c) ACRES will retain all other claims, rights, and privileges granted or acknowledged under the DIP Order and same shall remain effective and enforceable in accordance with the DIP Order until the Allowed ACRES Claim is paid in full; (d) the provisions in the DIP Order related to the Allowed ACRES Claim shall remain effective and enforceable at all time before and after the Effective Date until the Allowed ACRES Claim is paid in full; and (e) the Allowed ACRES Claim will be paid in full on or before the Maturity Date (as defined in the DIP Loan Agreement).

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

Accordingly, the Class 1 ~~allowed~~ claim ~~of ACRES~~ is impaired under the Plan.

**B.    CLASS 2 CLAIMS [ALLOWEDOTHER SECURED ~~GOVERNMENT~~ STATUTORY LIENS]:** ~~The Class 2CLAIMS]:~~   Any allowed secured claims other that the Allowed ACRES Claim and the Allowed Mechanic's Lien Claims will retain their liens as they existed on the Petition Date and shall accrue interest from the Petition Date until paid in full at the existing statutory rate for each claimant, with the principal balance and all accrued interest of each such allowed ~~Class 2secured~~ claim to be paid by the Debtor ~~upon~~ immediately following payment in full of ~~the earlier of a sale or permanent loan refinance of~~DIP Facility and ~~the Project, or one year after the Effective Date of the Plan~~Allowed ACRES Claim.

Accordingly, Class 2 ~~allowed~~ claims are impaired under the Plan.

**C.    CLASS 3A THROUGH 3DD3EE CLAIMS [ALLOWED SECURED MECHANIC'S LIEN CLAIMS]:** ~~The Class 3A through Class 3DD allowed secured claims~~ All Allowed Mechanic's Lien Claims will ~~retain their lien rights as they existed on the Petition Date~~ be satisfied in full and ~~shall be paid from DIP Facility proceeds on the Closing Date as set forth in the~~ released in accordance with the Gillett ~~Settlement Agreement with Gillett. Specifically, the~~ Order and DIP Order, which provide for payment of specified amounts to Gillett (as defined in the Gillett Settlement ~~Agreement provides that Debtor will pay Gillett the Contractor Payment of $10,839,222.97 (less a retainage~~Order) and to UES Professional Solutions 30, LLC dba Universal Engineering Services upon the closing of ~~$234,032.52 subject to retainage provisions in the Construction Contract) in full satisfaction of all previous work provided by Gillett and its subcontractors. Prior to the Closing Date and subject to payment of the Contractor Payment from~~ the DIP Facility, ~~Gillettat~~ which time all Allowed Mechanic's Lien Claims will be ~~responsible for obtaining from its subcontractors all lien, claim, and lis pendens releases and dismissals of any litigation~~ deemed satisfied and their liens and claims against the Debtor and the Project. ~~Pursuant to the DIP Order and Gillett Settlement Order, upon payment from the DIP Facility, all Class 3A through 3DD Claims shall be deemed satisfied and their claims against the Debtor and Project~~ deemed ~~withdrawn~~released and expunged.

27

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

**Formatted:** Tab stops: Not at  0.44" +  0.5"

Accordingly, Class 3A through Class 3DD allowed secured3EE claims of mechanic's lienholders are unimpaired under the Plan.

**Formatted: Underline**

**D.    CLASS 4 CLAIMS [ALLOWED UNSECURED TRADE CLAIMS OF LESS THAN $20,000]:** The Allowed Class 4 general unsecured claims of trade creditors with individual claims of less than $20,000claims each will accrue interest at 4% per annum from the Petition Date until paid in full. For administrative convenience, the Debtor shall pay the allowed Class 4 claims in one lump sum from operating revenues or new loan proceeds on or before March 1, 2026. If the Debtor sells the Project, the Debtor shall pay allowed Class 4 claims on a proratapro rata basis from the net sale proceeds remaining after payment of allthe DIP Facility, the Allowed ACRES Claim and all other allowed secured and higher priority claims. Remaining unpaid Allowed Class 4 claim amounts, if any, shall be discharged to the extent allowed under the Bankruptcy Code. If insufficient sale proceeds exist to pay Allowed Class 4 and 5 claims in full, no distribution shall be made to Class 6 equity holders.

Accordingly, the Class 4 allowed claims are impaired under the Plan.

**E.    CLASS 5 CLAIMS [ALLOWED UNSECURED CLAIMS]:** The Allowed Class 5 allowed general unsecured claims will accrue interest at 4% per annum from the Petition Date until paid in full and shall be paid by the Debtor in quarterly installments of $200,000 starting January 1, 2027, and continuing on the first day of each calendar quarter thereafter until paid in full, with each quarterly payment to be distributed on a pro rata basis among all allowed Class 5 claims. If the Debtor sells the Project, the Debtor shall pay allowed Class 5 claims on a proratapro rata basis with allowed Class 4 claims from the net sale proceeds remaining after payment of allthe DIP Facility, the Allowed ACRES claim and all other allowed secured and higher priority claims. Remaining unpaid allowed Class 5 claim amounts, if any, shall be discharged to the extent allowed under the Bankruptcy Code. If insufficient sale proceeds exist to pay allowed Class 4 and allowed Class 5 claims in full, no distribution shall be made to Class 6 equity holders.

Accordingly, Class 5 allowed claims are impaired under the Plan.

**F.    CLASS 6 EQUITY INTERESTS OF DTH 215 VENTURE, LLC:** The Class 6

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

equity interests of DTH 215 Venture, LLC as of the Petition Date shall not be modified, but the Debtor shall not make any economic distributions to equity holders on account of their equity interests in the Debtor unless and until after all allowed higher priority claims, including Classes 4 and 5, are paid in full with accrued interest under the Plan.

Accordingly, the Class 6 equity interests of DTH 215 Venture, LLC are <u>unimpaired</u> under the Plan.

## VI.

## TREATMENT OF EXECUTORY CONTRACTS, NON-EXECUTORY CONTRACTS, UNEXPIRED LEASES AND DISPUTED CLAIMS

**RESERVATION OF RIGHTS.** The Debtor reserves the right to assume or reject, pursuant to Section 365 of the Bankruptcy Code, any executory contract or unexpired lease not assumed or rejected prior to the ~~Confirmation~~Effective Date. All executory contracts and unexpired leases not specifically assumed or rejected through the Plan as of the ~~Confirmation~~Effective Date or as to which an application to reject shall not be pending on the ~~Confirmation~~Effective Date shall be deemed <u>rejected</u> by the Debtor. ~~The~~ Debtor assumes the following contracts effective as of the Effective Date:

- ~~Construction Contract with Gillett~~The Agreement, as modified by the PCCO (each as defined in the Gillett Settlement Agreement). There are no defaults that must be cured in connection with the assumption of this contract.

**DISPUTED CLAIMS.** ~~Through their Disbursing Agent, the Debtor~~The Debtor (either directly or through its disbursing agent) will only make distributions according to the Plan and when claims become allowed claims ~~as such terms are defined in the Plan~~and, to the extent paid prior to the repayment in full of the DIP Facility and the Allowed ACRES Claim, in accordance with the DIP Order and the Approved Budget. There are currently claims pending against the Debtor, either filed or scheduled, which are or will become Disputed Claims. As to some Disputed Claims, the Debtor disputes only the classification of the claims asserted by the holder. With respect to other Disputed Claims, the Debtor accepts the classification asserted by the holder but

disputes the amount of the claim alleged by such holder.  In some cases, the Debtor disputes both the asserted classification and the alleged amount.  In addition, the Debtor and other parties in interest may object to certain other claims based upon equitable or contractual subordination pursuant to § Section 510 of the Bankruptcy Code.  Specifically, such subordination claims may be asserted against any person or entity buying claim(s) for speculation and profit in Debtor's bankruptcy case.  No distribution will be made with respect to any such Disputed Claims unless and until they become allowed claims.

A.    **Administrative Claims**. All requests for payment of Administrative Claims (other than Administrative Claims that are not disputed and as to which there exists no dispute that they were incurred in the ordinary course of business) that accrued prior to the Effective Date must be filed with the Bankruptcy Court and served on the Debtor no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to file requests for payment by the Administrative Claims Bar Date but fail to timely do so shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtor or the Reorganized Debtor.

A.**B.**   **Claims Objections**. Objections to Claims (other than Administrative Claims) shall be filed with the Court and served upon each holder of a Claim to which objection is madethe holders of such Claims no later than one-hundred-twenty (120) days after the Effective Date. Pursuant to the DIP Order, the Debtor has waived and released all objections to the Allowed ACRES Claim.

B.**C.**   **Payment Procedures**. Payments to the holder of a Disputed Claim to which(other than an objection has been filedAdministrative Claim) that ultimately becomes an Allowed Claim shall be made in accordance with the provision of the Plan with respect to the Class of Creditors to which the holder of such an Allowed Claim belongs.  Interest, if any, on any funds reserved for a contested claimsuch Disputed Claim shall inure to the benefit of the holder of such an Allowed Claim.

C.**D.**   **Avoidance Actions**. In accordance with 11 U.S.C. § 1123(b), the Debtor shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

30

estate may hold against any person or entity, including, without limitation, claims and causes of action arising under Sections 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code. To the extent appropriate, the Debtor shall reserve and have the right to bring any and all avoidance actions, the same to be commenced within one (1) year after the Effective Date. Proceeds of all avoidance actions shall vest in the Debtor pursuant to 11 U.S.C. § 1141.

D.    **Litigation Claims.** In accordance with 11 U.S.C. § 1123(b), the Debtor shall retain all other claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any other person or entity, including, without limitation, (i.e., other than claims and causes of action arising under Sections 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.) not previously released, waived or settled pursuant to the DIP Order or other Final Order. To the extent appropriate, the Debtor shall reserve and have the right to commence any and all actions on contingent and unliquidated litigation claims within one (1) year of the Effective Date and proceeds of all litigation claims shall vest in the Debtor pursuant to 11 U.S.C. § 1141. The Debtor is currently aware of (subject to the following potential litigation claims:

- Debtor preserves standard warranty and related claims in connection with its Project under the Construction Contract, Settlement Agreement/PCCO, and related agreements.

- Potential direct and derivative claims and counterclaims under lender liability theories and breach of contract, including for breach of the implied covenant of good faith and fair dealing against liens granted ACRES, but only for any claims arising from ACRES' post-petition conduct and not otherwise waived by Debtor under the DIP Facility.

E.    Order). The Debtor expressly reserves the right to pursue these any such litigation claims and other related claims against these parties and any of their predecessors, successors, and assigns, and also their insurance providers, sureties, and guarantors.

**VII.**

**STATEMENT OF IMPAIRMENT**

The following classes are impaired and therefore entitled to vote for the Plan—Class 1, Class 2, Class 4, and Class 5.

31

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

Classes 3A through 3DD3EE and Class 6 are unimpaired, do not vote, and pursuant to the Bankruptcy Code are deemed to have accepted the Plan.

### VIII.
### MEANS FOR EXECUTION OF THE PLAN

**A.    Proposed Plan Funding**

The Debtor intends to fund its obligations under this Plan and ongoing construction and business operations from a combination of funds borrowed under the DIP Facility, leasing revenues, permanent financing, and/or sale proceeds detailed as follows:

**1.    DIP Facility**: As explained previously, theThe Debtor has negotiated and obtained Court approval of the DIP Facility with ACRES in the maximum principal amount of $27,880,000. The DIP Facility proceeds will be used, among other things, to pay Gillett and its subcontractorsamounts under the Gillett Settlement Agreement, and to complete construction of the Project under the supervision of an experienced owner's representative/ construction manager, such as Solaris Development, LLC or Killian Construction, to work with Gillett and oversee the Project.

The estimated timeline for completion of the Project is fourteen (14) weeks (98 days) after commencement, which includes two (2) weeks of remobilization. Remobilization includes resubmitting Rev10 Drawings with Worth Architect Group, the architect of record, and obtaining City of Henderson approval for the revised plan submissions. The Debtor and Gillett have already started testing systems and conducting inspections of the Project and expect to ramp up remobilization and commence construction as soon as the DIP Facility closes, with completion of construction and final inspections expected to occur around April 30, 2025. The above timeline is solely for the completion of the residential units and common areas, excluding the commercial space. The commercial space is presently intentionally unfinished in order to maximize tenant interest and minimize construction dollars until tenancy is determined. An estimated construction timeline is attached to the Disclosure Statement as **Exhibit C**.

Any distributions and payments to be made under this Plan prior to repayment in full of

Formatted: No underline

the DIP Facility and the Allowed ACRES Claim must comply with the DIP Order and the Approved Budget.

**2.** **Permanent Lender**: ~~By~~In accordance with the milestones identified on Exhibit 3 to the DIP Order, by April 15, 2025, the Debtor ~~expects to~~will engage a broker or financial advisor acceptable to ACRES to assist the Debtor with the process of entering into a transaction that will result in payment of the DIP Facility and Class 1 Claim by the Maturity Date, including permanent financing, a joint venture, a capital contribution, or a combination of those (collectively a "~~Refinance~~ Transaction"). Previously, Ackman Ziff/MB Bear Capital, has obtained loan proposals for bridge, bridge-to-permanent, permanent, and/or CPACE funding in amounts exceeding $55 million. Some of those proposals were contingent upon the Project having a full certificate of occupancy and stabilized revenues.

Terms for other potential permanent financing options are not yet known, but the terms will be usual and customary terms for this type of commercial Project. The proceeds of any such permanent financing remaining after repayment in full of the DIP Facility and the Allowed ACRES Claim shall be available to fund the Debtor's obligations under this Plan.

**3.** **Leasing Revenues**: ~~Prepetition, the~~The Debtor has obtained ~~a five~~an eight-year proforma Operating Budget at Stabilization from ~~Westcorp, a~~RPM Living, LLC, a national leader in residential property management ~~in the greater Las Vegas metropolitan area.~~ Based on the ~~five~~eight-year budget, the Debtor estimates annual net operating income of $4.1 to $~~4.7~~5.2 million starting in the first full year after completion of the Project. A copy of the Debtor's proforma ~~five~~eight-year operating budget is attached to the Disclosure Statement as Exhibit D. ~~The Debtor expects to obtain an updated proforma operating budget from another residential property management company based on additional revenue sources, including parking revenues.~~ The Debtor will provide any updated proforma prior to or in connection with ~~its~~the Plan confirmation hearing. Prior to the repayment in full of the DIP Facility, leasing revenues are available to fund the Debtor's obligations under this Plan in accordance with the DIP Order and the Approved Budget.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

Formatted: Font: Not Bold

**4.    Sale Proceeds:** ~~Based on~~In accordance with the ~~agreed-upon~~ milestones ~~under~~identified on Exhibit 3 to the DIP ~~Facility~~Order, the Debtor will engage a broker or financial advisor acceptable to ACRES ~~around~~by April 15, 2025, to assist with a ~~Refinance Transaction. The broker or financial advisor will also explore a~~ potential sale of the Project ~~if that appears to be the best option that will result in payment to~~to ensure repayment of the DIP Facility and the Allowed ACRES Claim before the DIP Facility Maturity Date. ~~The Debtor will commence marketing the Project around May 15, 2025, for a Refinance Transaction or possible sale. If the Debtor chooses to sell the Project because it believes that it will be unable to obtain a favorable Refinance Transaction before the Maturity Date, then~~, with any ~~marketing for a potential sale of the Project will be conducted in a competitive manner to seek~~proceeds remaining after such repayments available to fund ~~the best and highest sale price for the Project. Based on an updated appraisal as of September 5, 2024, the Debtor estimates that the value of the Project "as stabilized" is at least $72.3 million.~~

**5.    Use of Funds:** ~~Debtor proposes to use the DIP Facility funds (and anticipated future funds),~~as follows:

- ~~**Monthly Operating Expenses.** Debtor will pay insurance, property taxes, utilities, other essential business operating expenses and allowed chapter 11 administrative expenses.~~

- **4.    Loan Interest and Adequate Protection Payments.** ~~As explained previously, Debtor will pay ACRES adequate protection payments on account of its Class 1 secured claim and will also pay ACRES accruing interest expense on the DIP Facility from advances~~Debtor's obligations under ~~the DIP Facility.~~this Plan.

- ~~**Completion of Construction in Phases.** Construction of the Project will resume upon funding of the DIP Facility. As set forth in the estimated construction timeline attached to the Disclosure Statement as **Exhibit C**, Debtor will first complete construction of the 151 residential units at the Project so that it can commence leasing those units, while proceeding to address the commercial space based on potential tenant needs and market rates at that time. The Debtor's lease agreements with commercial tenants may include~~

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

34

Formatted: Indent: Left: 0", First line: 0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.25" + Indent at: 0.5"

Formatted: Font: Bold, Underline

allowances to the tenants for tenant improvements. The Project's remaining cost to complete the entire project does not include potential tenant improvements to be paid by tenants and is estimated to take 14 weeks with a total cost of $4,680,650.45 under the Settlement Agreement with Gillett.

- Payments to Mechanic's lienholders. Under the Settlement Agreement with Gillett and the DIP Order, the DIP Facility funds will be used to pay existing mechanic's lienholders' allowed claims as set forth in the Gillett Settlement Order.

**B.    Post-Confirmation Default**

Except as otherwise provided in the DIP Facility with respect to ACRES, in      In the event the Debtor becomes delinquent in any duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel. The Debtor shall thereafter have thirty (30) business days from receipt of said notice in which to cure the default. In the event such default remains uncured, the affected creditor or creditors shall be entitled to foreclose upon any collateral (if a secured creditor) or take other appropriate action. The Debtor shall have the right to bring the issue of default before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to cure the default in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to one under Chapter 7 of the Bankruptcy Code or dismissal of the same is in the best interest of creditors. ACRES may also elect to proceed in accordance with the terms and conditions contained in the DIP Order with respect to any defaults related to the DIP Facility and the Allowed ACRES Claim.

**C.    Professionals' Fees**

After the ConfirmationEffective Date of the Plan, the Debtor and any other professionalDebtor's Professionals, such as Debtor's general bankruptcy counsel, any special purpose counsel, or accountants, will not be required to apply to the Court for compensation for services rendered post-confirmation.Effective Date. Post-confirmationEffective Date

compensation of the Debtor's ~~professionals~~Professionals shall be at their normal hourly rate(s) and customary cost charges.

**D.    Distribution**

All cash proceeds shall be distributed in the foregoing manner except amounts necessary to pay disputed claims against the Debtor in the event they are allowed, which shall be held as a reserve and paid as such claims are determined by agreement between the parties or as are judicially determined.

**E.    Taxes**

Unless otherwise provided in the Plan, all taxes are current and there are no income tax liens on real or personal property owned by the Debtor. The Debtor is not aware of any material tax consequences from the proposed Plan that would affect it because it is a limited liability company. All tax benefits and liabilities flow through to the Debtor's equity holders. In accordance with 11 U.S.C. § 1146(a), any ~~property~~ transfers or sales of the Debtor's Property by the Debtor as a result of this Plan may not be taxed under any law imposing a stamp tax or similar tax, including real property transfer taxes.

**F.    General Risk Factors**

The Plan and its implementation are subject to certain risks, including that the Plan may not be accepted by the requisite number of Creditors to confirm the Plan. Even if the Plan receives the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan. Even if the Bankruptcy Court determined that the Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for ~~confirmation~~Confirmation had not been met. Moreover, the Debtor cannot provide assurances that modifications to the Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Plan is not confirmed, it is unclear what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan.

**Formatted:** No widow/orphan control

If the Plan is not confirmed, the Debtor will need to revise the Plan and it is unclear whether an alternative chapter 11 plan could be implemented and what distribution the holders of Allowed Claims and Interests would receive. If an alternative could not be agreed to, it is possible that the Debtor would have to liquidate its assets in chapter 7, in which case it is likely that the holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Plan, and Interest Holders would likely receive nothing.

Debtor's financial projections are estimates only and not promises of future performance. The financial projections are subject to common risk factors existing for any forward-looking projections, meaning that the projections are based on current known market conditions and assumptions. Any significant changes in the national economy or other outside factors could materially affect the financial projections for better or worse. There can be no assurances that the estimated proceeds on which future distributions have been projected in the Plan will be realized by the Debtor. There can also be no assurances that the estimated Claim amounts set forth in the Plan for unliquidated, contingent, or disputed Claims are correct. The estimated amounts are based on certain assumptions and facts believed by the Debtor with respect to a variety of factors that have not yet been adjudicated by any court. Both the actual amount of Allowed Claims in a particular Class and the Allowed amount of funds available for distribution to such Class may differ from the estimates in the Plan. If the total amount of Allowed Claims or Interests in a Class is higher than the estimates, such Claims or Interests may take longer to pay or may ultimately receive less than projected in the Plan.

**IX.**

**MISCELLANEOUS PROVISIONS**

A.    **The Disbursing Agent.**

The Debtor is ultimately responsible for making all distributions pursuant to the Plan.

B.    **Unclaimed Distributions.**

Any property to be distributed pursuant to the Plan, if not claimed by the distributee within one (1) year after the payment, shall be returned to the Debtor and forfeited by the distributee.

C.    **Effect of Confirmation.**

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

Upon ~~confirmation~~Confirmation and performance of the Plan, the Debtor shall be discharged from any debt that arose before the date of Confirmation, and any debt of a kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, to the fullest extent permitted by 11 U.S.C. § 1141(d~~).~~); provided, however, that Confirmation of this Plan shall not (a) discharge the Debtor from any claims or debts related to the DIP Facility or the Allowed ACRES Claim until each has been paid in full, or (b) vest property of the Estate in the Reorganized Debtor free and clear of the liens, claims and interests held by ACRES on account of the DIP Facility and the Allowed ACRES Claim. In addition, pending execution of the Plan, and unless the Court has otherwise expressly ordered or the Plan or the DIP Order otherwise expressly provides, all creditors and parties in interest shall be stayed from proceeding against the Debtor's assets including stay of default proceedings.

**D.    Exculpation.**

The Debtor, nor any of its respective members, managers, officers, directors, employees, representatives, professionals or agents, will have or incur any liability to any Creditor for any act or omission occurring between the Petition Date and the Effective Date in connection with or arising out of the Reorganization Case, including, without limitation, prosecuting ~~confirmation~~Confirmation of this Plan, consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for breach of fiduciary duty, gross negligence, willful misconduct, or fraud. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not release any post-Effective Date duty, obligation or liability under this Plan, the DIP Facility, or the DIP Order.

**E.    Notice.**

Any notice described in or required by the terms of this Plan, or the Code and Rules shall be deemed to have been properly given when actually received or if mailed, five (5) days after the date of mailing, if such shall have been sent by certified mail, return receipt requested, and if sent to:

The Debtor, addressed to:

HARRIS LAW PRACTICE LLC
NORMA GUARIGLIA, ESQ.
STEPHEN R. HARRIS, ESQ.
850 E. Patriot Blvd., Suite F
Reno, Nevada 89511

**Formatted:** Spanish (Spain)

**F.    Headings**.

The headings used herein are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**G.    Severability**.

Should any provision of this Plan be determined to be unenforceable following the Effective Date, such determination shall in no way limit or affect the enforceability of any and all other provisions of this Plan.

**H.    Governing Law**.

Except to the extent that the Bankruptcy Code or other applicable federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed in accordance with the laws of the State of Nevada, notwithstanding any conflict of law principles.

**I.    Successors or Assigns**.

The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such person.

**J.    Designation of Managers and Governance Issues**.

The Debtor's operations will be managed post ~~confirmation~~Confirmation by its existing managing member, DTH 215 Development, LLC, and preferred member, Sixty West Crescent Fund, LLC, according to the Debtor's prepetition operating agreement and corporate governance documents, as may be amended in the ordinary course by the ~~Debtors'~~Debtor's existing members. No compensation shall be paid to these corporate managers and members for their management of the Debtor, except that the Debtor will reimburse them for expenses incurred in their management functions. The Debtor's managers will also employ other business and construction

professionals in the ordinary course of business to assist in the construction and management of the ~~Debtor's~~ Project, such as Solaris Development, LLC, RPM Living, LLC, or ~~Killian Construction to oversee completion of the Project~~ other agents and Property managers, and will compensate those professionals under customary terms in the industry and in accordance with the DIP Order.

**K.    Post Confirmation Reporting and Payment of UST Fees.**

> *Formatted:* Font: Bold, Underline

Post Confirmation, the Reorganized Debtor shall continue filing monthly operating reports through the Effective Date. After the Effective Date, the Reorganized Debtor and any other authorized parties who have been charged with administering the confirmed plan shall file post ~~confirmation~~Confirmation reports in the manner prescribed by 11 U.S.C. § 1106(a)(7) and Fed. R. Bankr. P. 2015(a)(5) for every calendar quarter through the date the Court enters a final decree closing this case, an order dismissing the case, or an order converting the case to another chapter in bankruptcy.

Until the Effective Date ~~of a confirmed plan~~, the Debtor shall timely pay the ~~U.S.~~US Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6). After the Effective Date, the Reorganized Debtor and any other authorized parties who have been charged with administering the confirmed ~~plan~~Plan shall be responsible for the timely payment of all fees incurred after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6) until the Court enters a final decree closing the case, an order dismissing the case, or an order converting the case to another chapter in bankruptcy.

The resumption of the filing of post ~~confirmation~~Confirmation reports and the payment of fees shall occur if an order has been entered on the docket that vacates any of the above orders or reopens the case for a reason other than that which is purely administrative.

**X.**

**MODIFICATION OF THE PLAN**

The Debtor will have the right to modify this Plan in accordance with the provisions of the Bankruptcy Code and ~~Chapter 11.~~ the DIP Order. In this regard:

1. In accordance with Section 1127(a) of the Bankruptcy Code and Chapter 11, 11 U.S.C. § 1127(a), modification(s) of this Plan may be proposed in writing by the Debtor at any time(s) before confirmationConfirmation, *provided that* the Plan, as thus modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and Chapter 11, 11 U.S.C. §§ 1122 and 1123is acceptable to ACRES, and the Debtor complies with Section 1125 of the Bankruptcy Code and Chapter 11, 11 U.S.C. § 1125.

2. In accordance with Section 1127(b) of the Bankruptcy Code and Chapter 11, this Plan also may be modified by the Debtor at any time(s) after confirmationConfirmation and before substantial consummation of this Plan, *provided that* the Plan, as thus modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code as more fully set forth in Section 1127 and is acceptable to ACRES.

3. Any holder(s) of a claim that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Court for doing so, such holder(s) changes their previous acceptance(s) or rejection(s).) or, in the case of ACRES, the Plan as modified in not acceptable to ACRES.

4. Every modification of this Plan will supersede the previous version(s) of the Plan as and whenever each such modification is effective as provided in this Article X. When superseded, the previous version(s) of the Plan will be in the nature of withdrawn or rejected settlement proposal(s), and will be null, void, and unusable by the Debtor or any other party for any purpose(s) whatsoever with respect to any of the contents of such version(s) of the Plan.

## XI.
## DISCHARGE AND STAY CONTINUATION

Confirmation and performance of this Plan will discharge the Debtor from any and all debts to the extent provided under Section 1141(d) of the Bankruptcy Code and will otherwise have all effects provided in such 11 U.S.C. § 1141, which are not expressly inconsistent with the provisions of this Plan.: provided, however, that Confirmation of this Plan shall not (a) discharge the Debtor from any claims or debts related to the DIP Facility or the Allowed ACRES Claim until each has been paid in full, or (b) vest property of the Estate in the Reorganized Debtor free

and clear of the liens, claims and interests held by ACRES on account of the DIP Facility and the Allowed ACRES Claim. Pending execution of this Plan and unless: (a) the Court has otherwise expressly ordered; or (b) this Plan or the DIP Order otherwise expressly provides, all creditors will continue to be stayed from proceeding against the Debtor or its assets.

**Post Confirmation Injunction**

Other than as provided in the DIP FacilityOrder with respect to ACRES, no entity may commence or continue any action or proceeding, or perform any act: (i) to interfere with implementation and consummation of the Plan and the payments to be made thereunder; or (ii) to assert any claim, counterclaim, crossclaim, affirmative defense, defense, set off, recoupment, or any action of any kind or nature (collectively "Potential Actions") against Debtor, or any of its successors or assigns, except as authorized by the Court, or as necessary to adjudicate the Allowance of Claims filed.

Except as otherwise provided herein, confirmationConfirmation of the Plan shall constitute a permanent injunction against and irrevocable release of any and all Potential Actions.

**XII.**

**RETENTION OF JURISDICTION**

Notwithstanding confirmationConfirmation of this Plan, the Court will retain jurisdiction for the following purposes, and each of them:

1.    The Court will retain jurisdiction to determine the allowability and payment of any claim(s) upon any objection(s) thereto (or other appropriate proceedings) by the Debtor or by any other party in interest entitled to proceed in that matter. As part of such retained jurisdiction, the Court will continue to determine the allowability of Administrative Claims and any request(s) for payment(s) thereof, including professional fees and costs which are Administrative Claims.

2.    The Court will retain jurisdiction to determine any dispute(s) which may arise regarding the interpretation of any provision(s) of this Plan or the DIP Order.

3.    The Court will retain jurisdiction to facilitate the consummation of this Plan by entering, consistent with the provisions of this Plan, any further necessary or appropriate order(s) regarding the enforcement of this Plan or the DIP Order and any provision(s) thereof.

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

4.      This Court will retain jurisdiction to adjudicate any cause(s) of action or other proceeding(s) presently pending or otherwise referenced here or elsewhere in this Plan, including, but not limited to, the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b), which may be pertinent to this Reorganization Case, and which the Debtor may deem it appropriate to initiate and prosecute in aid of its reorganization.

5.      The Court will retain jurisdiction to enter an appropriate final decree in this Reorganization Case.

6.      The Court will retain jurisdiction to enter an appropriate final decree, and any interim order(s), in any adversary proceeding(s) which may be initiated during this Chapter 11 proceeding.

## XIII.

## FEASIBILITY OF PLAN

The Debtor believes that the Plan is feasible based on the "as stabilized" market valuation of the Project estimated to be at least $72.3 million, combined with the near-complete state of the Project and its desirable location. The DIP Facility and Debtor's projected leasing revenues after completion of the Project will also provide sufficient funding to make payments under the Plan until the Debtor obtains permanent financing or alternatively, sells the Project in the ordinary course after competitive marketing.

The Debtor's proposed Plan provides for construction completion of the Project which will not only enhance the value, security, and aesthetics of the Project, but which will also invigorate the downtown Henderson business community and provide new housing for the community's residents.

## XIV.

## LIQUIDATION ANALYSIS

The Debtor is proposing a Plan based on continued business operations after completion of the Project and will obtain permanent financing or sell the Project, depending on the most beneficial outcome for the Debtor and its creditors.

The Plan must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the debtor filed a Chapter 7 petition instead.

In a Chapter 7 liquidation case, the general rule is that the Debtor's assets are sold by a trustee. Unsecured creditors share in the proceeds of sale only after secured creditors and administrative claimants are paid. Certain unsecured creditors get paid before other unsecured creditors do. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims. In the present case, a creditor would recover less from the assets of the bankruptcy estates under Chapter 7 than it would under Chapter 11. First, the Debtor's Plan proposes to pay all allowed unsecured creditors in full, with post-petition interest, which is not guaranteed in a Chapter 7 case. Second, in a Chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all money disbursed, 10% on any amount over $5,000 but less than $1,000,000, 5% on all amounts over $1,000,000 but less than $3,000,000, and reasonable compensation not to exceed 3% on any amount over $3,000,000, thus diminishing monies available for payment to unsecured creditors.

Debtor's Plan proposes 100% payment of allowed unsecured claims, with post-petition interest until paid. The Debtor estimates that its allowed creditors will receive substantially more through this Plan than in a chapter 7 liquidation because the net liquidation value of the Project in a "fire sale" is difficult to estimate based on the incomplete state of the Project and the lien priority disputes among the secured creditors.

Because the Debtor has no substantial liquid assets, a trustee could not pay ongoing utilities, property taxes, insurance, and security expenses to maintain the Project during any reasonable marketing period. Accordingly, a chapter 7 trustee would most likely have to conduct a fire-sale liquidation of the Project which would likely not pay all secured creditors, and unsecured creditors would receive nothing. The other alternative would be for a chapter 7 trustee to allow ACRES and/or a mechanic's lienholder to foreclose on the Project, also resulting in no

HARRIS LAW PRACTICE LLC
850 E. PATRIOT BLVD
SUITE F
RENO, NV 89511
775 786 7600

44

1   payment to junior secured creditors and unsecured creditors.

2                                   **XV.**

3                       **DISCLOSURE STATEMENT**

4          When the Debtor solicits the requisite acceptance(s) of this Plan, it will be accompanied

5   by a Disclosure Statement that will have been approved by the Court, as amended, modified, or

6   supplemented prior to such solicitation. The Debtor requests that all parties whose acceptance(s)

7   of this Plan are solicited should direct their attention to the Disclosure Statement.

8   ##

9   ##

10  ##

11  ##

12  ##

13  ##

14                                  **XVI.**

15                      **CONFIRMATION REQUEST**

16         The Debtor requests that the Court confirm the Plan in accordance with the provisions of

17  Section 1129(a) and/or Section 1129(b) of the Code.

18         Respectfully submitted January 17February 6, 2025.

19

20                         HARRIS LAW PRACTICE LLC

21                         */s/ Norma Guariglia*

22                         NORMA GUARIGLIA, ESQ.
                            Attorneys for Debtor

23

24

25

26

27

28

Formatted: Spanish (Spain)

**CERTIFICATE OF SERVICE**

On January 17February 6, 2025, the foregoing document was served via ECF automated system to all parties registered with ECF in this case on the date and time I filed the document with the Court's ECF system.

I declare under penalty of perjury that the foregoing is true and correct.

Dated January 17February 6, 2025.


*/s/ Norma Guariglia*
_____
Norma Guariglia